99.     For example, despite the fact that the BanxQuote License Agreement did <u>not</u> authorize the use of the BanxQuote Indexes in conjunction with *co-branded* products, services or marketing channels, on June 18, 2008, Defendant Capital One tacitly admitted breaching the license agreement by responding in an email as follows:

> We are merely marketing our *branded*-products through a marketing channel that is *co-branded.*

100.    Then, on October 17, 2008, Defendant Costco disclaimed any liability and had the audacity to respond as follows:

> Costco no more requires a license for providing a marketing channel in this case than a *newspaper* would require . . .

101.    On November 20, 2008, Plaintiffs followed up with a direct call to Costco's president and CEO James Sinegal. His answer was, "cynical" and evasive.

102.    It is a well known fact that traditional newspaper publishers do not own or operate chains of membership warehouse clubs with in-store TVs and integrated e-commerce websites that serve as an indispensable and exclusive gateway and transaction portal for their advertised products and services, nor do traditional newspapers publish primarily or exclusively products that are only carried at their own warehouse or e-commerce website.

103.    Furthermore, as stated in Costco's 10-K, the "Executive Membership program offers members additional savings and benefits on various *business and consumer services offered by Costco*," such as High Yield Savings Accounts & CDs.

104.    In addition, according to Costco's August 2008 *Costco Services Brochure*, Costco *"stands behind"* its products and services with Costco's *"guarantee of satisfaction,"* listing High Yield Savings Accounts & CDs under *its own* services.

105.    In contrast to Defendant Costco's false claim, newspapers are not known to operate or offer Costco's types of wholesale clubs, merchandise and services, including High Yield Savings Accounts & CDs, or member benefits and guarantees of satisfaction such as Costco's. *See* Figures 5-6 below.

**Figure 5 – Costco Stands Behind its Offers With a Guarantee of Satisfaction**



**Figure 6 – Costco Services Brochure Offering *Its Own* High Yield Savings Accounts & CDs**



**COUNT 1**
(Copyright Infringement)

106.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Second Amended Complaint as though fully set forth here.

107.    Plaintiffs have all rights, title, and interest in registered and unregistered copyrights in the original database compilations that form the BanxQuote Indexes from January 1, 2004 through December 31, 2008. Plaintiffs have the exclusive right to reproduce, redistribute, display, and prepare derivative works from the Copyrighted Works, as provided in 17 U.S.C. § 106.

108.    Plaintiffs own valid and enforceable copyrights in the original database compilations that form the BanxQuote Indexes from January 1, 2004 through December 31, 2008, which are creative works of original authorship filed with the United States Copyright Office.

109.    Plaintiffs obtained from the United States Copyright Office, a Certificate of Registration Number TX 6-903-396 effective March 6, 2009, that covers for example BanxQuote Index updates from 10/1/2008 to 12/31/2008, infringed by Defendants.[28]

110.    These copyrights generally cover, but are not limited to, original works of authorship consisting of systematically researched highly time-sensitive bank rate databases and indexes for a series of banking, mortgage and loan products throughout the United States, collected, selected, coordinated and arranged in a particular manner as independently determined and conceived from time to time by Plaintiffs in their sole discretion.

---

[28] As discovery progresses, Plaintiffs reserve the right to add claims based on additional copyright registrations filed with the United States Copyright Office, as they become effective.

111. By virtue of their unauthorized and unlicensed use, impermissible copying and free-riding of the BanxQuote Indexes, Defendants have infringed Plaintiffs' copyrights.

112. Such infringement includes the unlawful reproduction, distribution and public display the BanxQuote Indexes on Defendants' co-branded products and marketing channels, via posting to their websites, by electronic mail, TV, print media or otherwise, using the BanxQuote Indexes exact identity of arrangement and substantial similarity of expression in violation of Plaintiffs' rights in 17 U.S.C. § 106.

113. Defendants' infringement of Plaintiffs' copyrights was willful and with notice and full knowledge of Plaintiffs' copyrights in their BanxQuote Indexes.

114. Plaintiffs are entitled to damages in an amount to be proven at trial, including any profits of Defendants directly or indirectly attributable to the infringement not taken into account in computing actual damages under 17 U.S.C. § 504(b). Plaintiffs are also entitled to statutory damages under 17 U.S.C. § 504(c).

115. Plaintiffs are also entitled to recover attorney's fees from Defendants pursuant to 17 U.S.C. § 505.

116. Defendants' infringement of Plaintiffs' exclusive rights have also caused Plaintiffs irreparable injury. Unless restrained and enjoined, Defendants will continue to commit such acts. Plaintiffs have suffered an injury for which there is no adequate remedy at law, entitling Plaintiffs to remedies including injunctive relief as provided by 17 U.S.C. § 502, and an order impounding or destroying any and all infringing materials pursuant to 17 U.S.C. § 503.

COUNT 2

("Hot News" Misappropriation Under New York Common Law)

117.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Second Amended Complaint as though fully set forth here.

118.    Plaintiffs produce and manage the original BanxQuote Indexes by compiling thousands of constantly changing interest rates and banking information from discretionary and periodically changing leading banks in all fifty states of the United States at a substantial cost, both monetary and in the form of corporate resources and sophisticated technological infrastructure.

119.    The BanxQuote Indexes are highly time sensitive and subject to change by Plaintiffs at any time, since they are intricately intertwined with, and based on thousands of variable interest rates subject to change at any time by the banks[29], Fed Funds, the U.S. Treasury market, domestic and global money markets, London Interbank LIBOR rates, Eurodollar markets, bond markets, futures markets and foreign exchange markets, seven days a week and around the clock..

120.    Upon information and belief, Defendants' constant and continuous unauthorized daily reproduction and multimedia redistribution of Plaintiff's BanxQuote Indexes to approximately 53.5 million Costco members for a period of five consecutive years clearly constitutes free riding on the Plaintiffs' efforts and expense.

---

[29]    Defendants' own disclaimer on the front page of their co-branded website at http://www.capitalone.com/directbanking/offers/costco/ warns prospective investors of the time-sensitiveness of interest rates, stating as follows: * *The above annual percentage yields (APYs) are effective as of (date) and may change at any time.* See also, e.g., the illustration above at Figure 4 – May 2006, *The Costco Connection* – Page 75 Editorial – *INSIDE COSTCO*, which states: *Rates are variable and are subject to change.*

121.    Defendants were in direct competition with services offered by Plaintiffs. BanxQuote not only licensed its BanxQuote Indexes to select third parties, but it also used its BanxQuote Indexes prominently on its own website *BanxQuote.com* to increase its traffic and demand, and as a performance benchmark to facilitate the marketing of High Yield Savings Accounts and CDs offered by BanxQuote on behalf of other banks such as Defendant Capital One, in competition with Defendants' co-branded website and multi-media network.

122.    The ability of others to free-ride on the efforts of Plaintiffs would so reduce Plaintiffs' incentive to produce the BanxQuote Indexes, that their existence or quality would be substantially threatened, to the detriment of millions of consumers and investors, and thousands of financial institutions, government agencies, businesses and professionals.

123.    Defendants' acts constituted "hot-news" misappropriation under New York Common law.

124.    Defendants have acted in bad faith, maliciously, willfully, wantonly, and without due regard for Plaintiffs' rights.

125.    Plaintiffs are entitled to recover compensatory damages and punitive damages, in an amount to be determined at trial, including any profits of Defendants, together with pre-judgment and post judgment interest, the costs and disbursements of this action, and all other and further relief the Court deems just and proper.

### COUNT 3
Violation of the Digital Millennium Copyright Act - Removal and/or Alteration of Copyright Management Information - 17 U.S.C. § 1202(b)

126.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

127.    Plaintiff BanxCorp included a copyright notice at the bottom of every page on its websites reading: "© [year of publication] BanxCorp. All Rights Reserved."

128.    This copyright notice constitutes "copyright management information," as defined in 17 U.S.C. § 1202(c).

129.    Upon information and belief, Defendants, without authority of Plaintiffs or the law, have intentionally altered the copyright management information by displaying information such as "Source: Banxquote.com national averages as of [date]," or another similarly altered reference line,   in connection with Plaintiffs' BanxQuote Indexes, instead of Plaintiff BanxCorp's copyright notice in violation of 17 U.S.C. § 1202(b)(1).

130.    Upon information and belief, Defendants, without the authority of Plaintiffs or the law, displayed Plaintiffs' BanxQuote Indexes daily on their co-branded website and various other media during five consecutive years, knowing that the copyright management information had been altered without the authority of Plaintiffs or the law in violation of 17 U.S.C. § 1202(b)(3).

131.    Upon information and belief, Defendants' removal of copyright management information from Plaintiffs' BanxQuote Indexes, including the Copyrighted Works, and subsequent distribution of the BanxQuote Indexes, including the Copyrighted Works, as alleged above, was willful and intentional, and was executed with full knowledge of Plaintiffs' rights under copyright law, and in disregard of Plaintiffs' rights.

132.    Plaintiffs are entitled to recover actual damages suffered as a result of the violation and any profits of Defendants attributable to the violation and not taken into account in computing actual damages, or, at Plaintiffs' election, statutory damages pursuant to 17 U.S.C. § 1203(c).

133.    Plaintiffs are entitled to recover costs and attorneys' fees from Defendants pursuant to 17 U.S.C. § 1203(b)(4) and (5).

## COUNT 4
(Common Law Fraud)

134.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

135.    Defendants, possessing superior knowledge not readily available to Plaintiffs, and upon information and belief, while acting in concert, fraudulently induced Plaintiffs to grant the BanxQuote License Agreement to Defendant Capital One, by making material misrepresentations and omissions, year after year, regarding its intended use. Such representations were material as Plaintiffs would have denied Capital One the license agreement had they known of Capital One's intent to use the BanxQuote Indexes to market co-branded products on a co-branded website and multimedia marketing network together with Defendant Costco.

136.    Upon information and belief, such statements by Defendants were false and deceptive, since Defendant Capital One was in the process of launching its co-branded products and marketing campaign with Defendant Costco at the very same time it was negotiating the BanxQuote License Agreement with Plaintiffs, as evidenced by the close proximity in time between the execution of the BanxQuote License Agreement and the launch of Defendants' co-branded website and multi-media marketing campaign featuring Defendants' co-branded High Yield Savings Accounts and CDs with Plaintiffs' BanxQuote Indexes as an integral part thereof.

137.    Defendant Capital One made these misrepresentations and fraudulent concealments of material facts with scienter – that is with the knowledge and/or reckless

disregard for the truth of the statements that they made or caused to be made to Plaintiffs and with the intent that Plaintiffs rely on those misrepresentations and omissions to their detriment.

138.    Defendant Costco, knowingly, or through negligence and/or lack of diligence acted with the same scienter as Defendant Capital One.

139.    Plaintiff BanxCorp reasonably relied on the statements made by Defendant Capital One as the two parties had a long-standing and friendly business relationship, since 1997.

140.    Plaintiffs were damaged by Defendants' fraudulent acts in an amount to be proven at trial.

141.    Defendant Capital One is liable for common law fraud in an amount to be determined at trial.

142.    Upon information and belief, Defendant Costco is jointly and severally liable for common law fraud as Defendant Costco acted in concert with Capital One in unlawfully acquiring a license for the use the BanxQuote Indexes under a false pretense.

143.    Plaintiffs have been damaged by Defendants' conduct and seek damages for the unlawful use and profit earned by Defendants as well as dilution of demand for Plaintiffs' intellectual property, products and services, and punitive damages to be determined at trial.

### COUNT 5
(Breach of Contract)
(Against Defendant Capital One)

144.    Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

145.    Defendant Capital One entered into a BanxQuote License Agreement with Plaintiff BanxCorp, for valuable consideration, in which BanxCorp provided Capital One with a

non-exclusive, limited, and non-transferable license to electronically disseminate the BanxQuote

data only on the Capital One website, but not on a co-branded website.[30]

146.    The BanxQuote License Agreement entered into by Defendant Capital and

Plaintiff BanxCorp, among other things, provides:

> Company [Capital One] agrees and understands that it is not permitted to sublicense, transfer, or assign its rights hereunder and that it shall not permit the redistribution of the BanxQuote Data by any other third party without the express prior authorization of BanxQuote pursuant to a separate agreement or by mutually agreeable amendment executed and attached hereto."[31] [emphasis added].

> Company [Capital One] agrees: . . . b) to not knowingly encourage or participate in the unauthorized use of the BanxQuote Data, nor knowingly develop or market any software with the intention that such software shall be used to unlawfully manipulate the BanxQuote Data or otherwise in violation of the terms of this Agreement.[32]

> Company [Capital One] recognizes that the BanxQuote Data are valuable assets of BanxQuote developed by the expenditure of considerable work, time, and money, and Company [Capital One] acknowledges that it has no proprietary interest therein.[33]

> Any dispute arising out of this Agreement shall be brought only in the courts of the State of New York and the parties hereto thereby consent to jurisdiction of those courts over them.  This Agreement shall be governed by the laws of the State of New York without regard to the choice of law principles thereof.   Should any action be brought to enforce this Agreement.  The losing party shall pay all costs, expenses and reasonable attorneys fees incurred by the prevailing party to Enforce this Agreement. This Agreement supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, where oral or written, by any officer, employee, or representative of any party hereto. No amendment shall be effective unless in writing and signed by authorized representatives of both parties.[34]

---

[30] See preamble of BanxQuote Licensing Agreement annexed hereto as Exhibit "A".

[31] See BanxQuote License Agreement Paragraph 1 annexed hereto as Exhibit "A."

[32] See BanxQuote License Agreement Paragraph 9 annexed hereto as Exhibit "A."

[33] See BanxQuote License Agreement Paragraph 6 annexed hereto as Exhibit "A."

[34] See BanxQuote License Agreement Paragraph 10 annexed hereto as Exhibit "A."

147.     Defendant Capital One therefore had a duty, pursuant to the BanxQuote License Agreement, to, *inter alia*, use the BanxQuote Indexes in a manner authorized by the agreement, and to neither knowingly encourage and/or participate in the unauthorized use of the BanxQuote Indexes, nor to permit its sublicense, transfer, assignment, or redistribution by any other third party, such as Defendant Costco.

148.     BanxQuote has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms and conditions of the BanxQuote License Agreement.

149.     The BanxQuote License Agreement restricted Defendant Capital One's use of BanxQuote's proprietary market data and indices.

150.     Capital One breached the agreement by, among other things:

- Using BanxQuote's proprietary and copyrighted BanxQuote Indexes not only for its own (private label) branded products, but for co-branded products and through co-branded marketing channels, in partnership with Costco, a third party;

- Making material misrepresentations or omissions of material facts, year after year for five consecutive years, regarding the intended ultimate beneficiaries from the use of the BanxQuote Indexes;

- Knowingly encouraging and participating in the unauthorized use and commercial exploitation of the BanxQuote Indexes by a third party;

- Transferring, assigning and redistributing the BanxQuote Indexes for the benefit of Defendant Costco, an undisclosed third party;

38

- Permitting Defendant Costco to redistribute the BanxQuote Indexes without express prior authorization of BanxQuote;

- Using the BanxQuote Indexes in ways other than as stipulated under the agreement's terms and conditions;

- Failing to protect BanxQuote's rights in the BanxQuote Indexes, including, but not limited to, copyright;

- Failing to cooperate with BanxQuote to develop methods of protecting BanxQuote's proprietary rights from unlawful infringement;

- Violating the agreement's implied covenant of good faith and fair dealing; and,

- Unfairly interfering with Plaintiff's right to receive the benefits of the BanxQuote License Agreement.

151. As a result of Defendant Capital One's breach of the BanxQuote License Agreement, Plaintiffs have been and are entitled to damages in an amount to be proven at trial, including any profits of Defendant Capital One, together with pre-judgment and post judgment interest, the costs and disbursements of this action, and all other and further relief the Court deems just and proper.

## COUNT 6
### (Unfair Competition – New York Common Law)

152. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

153. Defendants have willfully, wantonly, improperly, unlawfully, without regard for BanxQuote's rights, and in bad faith misappropriated to their commercial advantage a benefit

and/or property right of BanxQuote, namely BanxQuote's investment in its proprietary and copyrighted BanxQuote Indexes.

154. Defendants have engaged in unlawful and immoral business acts or practices as alleged above, including a multitude of violations of Federal and State common law, and have done so knowing of Plaintiffs' claim to the BanxQuote indexes.

155. The acts and conduct of Defendants constitute unlawful and unfair competition under New York common law.

156. Defendants' unfair business practices have unjustly minimized BanxQuote's competitive advantage and have caused and are causing BanxQuote to suffer damages in an amount to be proven at trail.

157. Plaintiffs are entitled to any and all revenues, earnings, profits, compensation, and benefits that Defendants may have obtained in violation of New York common law, including, but not limited to, returning the value of the stolen property itself and any revenue earned from it, and should be enjoined from further unlawful, unfair, and deceptive business practices as well as any additional compensatory and/or punitive damages together with pre-judgment and post judgment interest, the costs and disbursements of this action, and all other and further relief the Court deems just and proper. Defendants should further be ordered to return all materials taken from Plaintiffs, and all copies of such, in their possession, custody, or control.

## COUNT 7
(Unjust Enrichment/Restitution)

158. Plaintiffs incorporate by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth here.

159.    Defendants were unjustly enriched in that they received benefits at the expense of Plaintiffs through their wrongful conduct, including Defendant Capital Ones' breach of contract and other unfair business practices.

160.    It would be unjust and against good conscience for Defendants to retain any value they obtained as a result of their wrongful conduct.

161.    Plaintiffs are entitled to any and all revenues, earnings, profits, compensation, and benefits that Defendants may have obtained in violation of New York common law, including, but not limited to, returning the value of the stolen property itself and any revenue earned from it, and should be enjoined from further unjust enrichment as well as any additional compensatory and/or punitive damages which this court sees fit. Defendants should further be ordered to return all materials taken from Plaintiffs, and all copies of such, in their possession, custody, or control.

## JURY DEMAND

162.    Plaintiffs hereby demand a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for an Order granting the following:

A.    Injunctive relief restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from the following:

(1) Copying, distributing, using, or creating derivative works from, any BanxQuote Indexes in any way, including for any business purpose, except as otherwise allowed by express license from BanxQuote or as otherwise set forth                                                                                     below;

(2) Copying, distributing or storing, or facilitating copying, distribution or storage of, any BanxQuote Indexes directly or indirectly from or to any of Defendants' offices, multi-channel media, computer systems or networks;

(3) Using any bot, scraper, spider, or other software tool to access, copy, distribute or use any BanxQuote Indexes in any way, including for any

business purpose;

(4) Downloading or facilitating the downloading of any BanxQuote Indexes from any BanxQuote website for, or on behalf of, any partner, customer or third party who does not have a valid and existing BanxQuote License Agreement for the specific BanxQuote Indexes being downloaded from BanxQuote entitling that partner, customer or third party to have and use those BanxQuote Indexes;

(5) Facilitating the access to, use of, or downloading from any BanxQuote website for, or on behalf of, any partner, customer or third party other than by using that specific partner's, customer's or third party's valid license;

(6) Facilitating the copying, distribution or use of any BanxQuote Indexes for, or on behalf of, any partner, customer or third party who did not have a current, valid and existing license from BanxQuote entitling that partner, customer or third party to have and use those BanxQuote Indexes, at the time they were downloaded or obtained by or on behalf of the partner, customer or third party;

(7) Regardless of the location of any specific BanxQuote Indexes, copying, distributing or using BanxQuote Indexes obtained through or for one partner, customer or third party to support a different partner, customer or third party;

(8) Otherwise engaging in acts of unfair competition, copyright infringement, and interference with BanxQuote's business relationships;

(9) That requires Defendants to file with the Court and serve on Plaintiffs within thirty (30) days after the service on Defendants of such injunction a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

B.   Directing Defendants to immediately return BanxQuote's property, including, without limitation, BanxQuote's proprietary and copyrighted BanxQuote Indexes, that Defendants wrongfully obtained from BanxQuote, as set forth in this Second Amended Complaint;

C.   Granting Plaintiffs' attorneys fees and costs pursuant to the License Agreement and the applicable statutes.

D.   Granting Compensatory, incidental, consequential, statutory and punitive damages in a sum to be determined at trial on each Count;

E.   Restitution for all revenue received by Defendants from their wrongful conduct which should rightfully have been received by BanxQuote and all profits derived from that wrongful conduct, and directing Defendants to pay all such sums to

Plaintiffs forthwith;

F.     Statutory damages of no less than $150,000 per copyrighted work as a result of Defendants' willful infringement of BanxQuote's copyrights;

G.     Prejudgment and post judgment interest;

H.     An accounting;

I.     Such other and further relief as the Court deems just and proper.

Dated:     White Plains, New York
September 1, 2009

Respectfully submitted,

CANTER LAW FIRM P.C.

By:

Nelson E. Canter, Esq. (NC2457)
*Attorneys for Plaintiff*
BanxCorp d/b/a/ BanxQuote, and
Norbert Mehl d/b/a BanxQuote
123 Main Street – 9th Floor
White Plains, New York 10601
(914) 948-3011
ncanter@canterlawfirm.com

To:     Nancy J. Mertzel
Gibbons, P.C.
*Attorneys for Defendants*
Costco Wholesale Corporation,
Capital One Financial Corporation,
Capital One Bank (USA), N.A., and
Capital One, N.A.
One Pennsylvania Plaza – 37th floor
New York, NY, 10119
(212) 613-2023

EXHIBIT "A"

**BANX** ≡CORP

## BanxQuote® Licensing Agreement

| Licensee Account Information | | | |
|---|---|---|---|
| Company: Capital One | Commencement Date: 01/12/2004 | | |
| | Expiration Date: 01/11/2005 | | |
| Address: 1680 Capital One Drive | **Licensed Data** | | |
| City: McLean   State: VA   Zip: 22102 | | | |
| Phone: 703-720-3916   Fax: | Savings & Jumbo BanxQuote Bank CD Index. | | |
| E-mail Address: brian.pilko@capitalone.com | Savings & Jumbo BanxQuote Bank Money Market Index. | | |
| Billing Contact Name: Brian Pilko, Pricing Manager | | | |

| BanxQuote Licensing Service | Net Annual Fee |
|---|---|
| Licensed Data to be retrieved by the Company from the BanxQuote website at http://www.banxquote.com for use in direct mail, print advertisements, newspaper advertisements, Company website, and marketing presentations. | $6,000.00 payable in advance. |

| Payment Method | | | |
|---|---|---|---|
| ⊔ Credit Card | ⊔ Electronic Funds Transfer | | |
| Card Type: | Bank Name: | | |
| Card Number: | Bank Address: | | |
| | City: | State: | Zip: |
| Expiration Date: | ABA Routing Number: | | |
| Cardholder Name: | Bank Account Number: | | |

I have read and agree to the **TERMS AND CONDITIONS** below.

Authorized Signature _Thea Mr_   Name _Thea Mason_   Date _1/28/04_

### TERMS AND CONDITIONS

Company is hereby contracting with BanxCorp ("BanxQuote") for the display and dissemination of BanxQuote's proprietary market data and indices, to be provided by BanxQuote as indicated above. Subject to the terms and conditions of this Agreement, BanxQuote hereby grants to Company a non-exclusive, limited, and non-transferable license to electronically disseminate the BanxQuote Data on the Company's Web site.

1. Company agrees and understands that it is not permitted to sublicense, transfer, or assign its rights hereunder and that it shall not permit the redistribution of the BanxQuote Data by any other third party without the express prior authorization of BanxQuote pursuant to a separate agreement or by mutually agreeable amendment executed and attached hereto. Except as otherwise specifically provided herein, this Agreement shall not transfer to Company any right to, or interest in, the BanxQuote Data, or in any related trademark, service mark or proprietary rights of BanxQuote.
2. The term of this Agreement shall be for an initial period as specified on the first page hereof, starting on the date first indicated on the first page (the "Commencement Date") and shall be automatically renewed for successive (1) one-year periods, unless either party notifies the other in writing not less than (30) thirty days prior to the end of the then-current Agreement period of its intention to terminate this Agreement effective at the end of such period. Company shall pay BanxQuote for the services provided by BanxQuote to Company, as more fully set forth on the first page hereof. Invoices are payable by Company on receipt and are subject to a late charge of one and one half percent per month for any amounts due BanxQuote hereunder which are not paid within (30) days of invoicing. Company acknowledges that BanxQuote reserves the right to interrupt the BanxQuote Data, or to terminate this Agreement, in the event of delinquent payments. BanxQuote reserves the right to increase the fees charged hereunder, such increase to be effective for the upcoming renewal term of this Agreement, by giving Company written notice of such increase no less than (30) thirty days prior to the end of the then-current agreement period. In the event Company fails to comply with this Agreement and such non-compliance is not cured (to the extent curable) to BanxQuote's satisfaction within (30) thirty days after written notice of such non-compliance is given to Company, BanxQuote may terminate this Agreement and Company agrees to pay all outstanding amounts owed BanxQuote for the BanxQuote Data already provided. In addition to and notwithstanding the above, if Company, or any of its employees, agents, or representatives, shall attempt to use the BanxQuote Data in a manner contrary to the terms of this Agreement, BanxQuote shall have the right, in addition to such other remedies as may be available to it, to injunctive relief enjoining such acts or attempt, it being acknowledged that legal remedies are inadequate.
3. Company is solely responsible for any legal liability arising out of or relating to (1) the BanxQuote Data, and (2) any material accessible to users therein and/or therefrom. BanxQuote represents and warrants that it holds the necessary rights to permit the use and distribution of the BanxQuote Data and such materials contemplated by this Agreement; and that to the best of its knowledge, the use, reproduction, distribution, or transmission of the BanxQuote Data and such material will not violate any criminal or common law, any rule or regulation, any statutory rights or any rights of any third parties, including, but not limited to, such violations as infringement or

6 Palmer Avenue | Scarsdale, NY 10583
Tel 914-722-1600 | Fax 914-723-8950 | partners@banx.com | www.banxquote.com



misappropriation of any copyright, patent, trademark, trade secret, image, or other proprietary or property right, false advertising, unfair competition, defamation, violation of any anti-discrimination law or regulation, or any other right of any person or entity. BanxQuote agrees to indemnify Company and to hold Company harmless from and against any and all liability, loss, damages, claims, or causes of action, including reasonable legal fees and expenses that may be incurred by Company, arising out of or related to BanxQuote's breach of any of the foregoing representations and warranties.

4. BanxQuote agrees to take all reasonable actions necessary to keep BanxQuote Data current, accurate, true and complete and to notify Company of any errors or omissions. BanxQuote shall not be liable, for any reason, for any errors, omissions, delays or inaccuracies in the BanxQuote Data provided or with respect to the display, dissemination and/or linkage of the BanxQuote Data, nor for any interruption of the BanxQuote Data due to events beyond the reasonable control of BanxQuote. BanxQuote shall not be liable to Company or to any other party for any special, direct, indirect, incidental, consequential or exemplary losses, claims or damages, howsoever caused, arising out of or in connection with this Agreement and/or the supply or failure of the BanxQuote Data, even if BanxQuote has been advised of the possibility of such damages, including without limitation, lost business or profits.

5. BANXQUOTE MAKES NO WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, INCLUDING SPECIFICALLY ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AS TO THE SERVICES WHICH WILL BE PROVIDED TO THE COMPANY BY BANXQUOTE, AND SPECIFICALLY DISCLAIMS ANY SUCH WARRANTY.

6. Company recognizes that the BanxQuote Data are valuable assets of BanxQuote developed by the expenditure of considerable work, time, and money, and Company acknowledges that it has no proprietary interest therein. Company shall honor all reasonable requests by BanxQuote, other than engaging as a party in litigation, to perfect and protect at BanxQuote's expense any of BanxQuote's rights in the BanxQuote Data, including, but not limited to, copyright.

7. In distributing or promoting the BanxQuote Data, Company shall refer to them as only by the name "BanxQuote.com", "BanxQuote.com Rates", "BanxQuote.com Index", "BanxQuote.com National Averages", "BanxQuote.com Market Data", by the BanxQuote.com logo or by other name(s) as is expressly authorized in writing by BanxQuote. All trade names, trademarks, service marks and logos, and attendant goodwill, now owned by BanxQuote, shall remain its sole property and all rights accruing from their use shall inure solely to the benefit of BanxQuote.

8. BanxQuote shall have the right to license the distribution of the BanxQuote Data independently of this Agreement in any manner BanxQuote desires, and BanxQuote shall not be restricted from entering into any arrangement with any third party, including competitors of Company, in connection therewith.

9. Company agrees: a) to include the name "BanxQuote.com" on all materials which show BanxQuote Data b) to not knowingly encourage or participate in the unauthorized use of the BanxQuote Data, nor knowingly develop or market any software with the intention that such software shall be used unlawfully to manipulate the BanxQuote Data or otherwise in violation of the terms of this Agreement. Notwithstanding the foregoing, Company shall have no responsibility or liability for the unlawful or unauthorized conduct of any third party, nor shall Company be required to refrain from engaging in the business of developing or marketing software merely because such software may have the potential of permitting third parties to make unauthorized use of the BanxQuote Data. Company shall cooperate with BanxQuote to develop methods of protecting BanxQuote's proprietary rights from unlawful infringement.

10. Any dispute arising out of this Agreement shall be brought only in the courts of the State of New York and the parties hereto hereby consent to jurisdiction of those courts over them. This Agreement shall be governed by the laws of the State of New York without regard to the choice of law principles thereof. Should any action be brought to enforce this Agreement, the losing party shall pay all costs, expenses and reasonable attorneys fees incurred by the prevailing party to enforce this Agreement. This Agreement supersedes all prior agreements, promises, covenants, arrangements, communications, representations or warranties, whether oral or written, by any officer, employee or representative of any party hereto. No amendment hereof shall be effective unless in writing and signed by authorized representatives of both parties.

**PLEASE FAX TO 914-723-8950 FOR PROCESSING.**

# EXHIBIT "B"

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## TX 6-903-396

**Effective date of registration:**

March 6, 2009

## Title

**Title of Work:** Group registration for database titled BANXQUOTE INDEX. Published updates from 10/1/2008 to 12/31/2008

**Previous or Alternative Title:** BanxQuote National Average Bank Rates

## Completion/ Publication

**Year of Completion:** 2008

**Date of 1st Publication:** December 31, 2008          **Nation of 1st Publication:** United States

## Author

* **Author:** BanxQuote

**Work made for hire:** Yes

**Domiciled in:** United States

**Anonymous:** No

## Copyright claimant

**Copyright Claimant:** BanxQuote

199 Main Street, Suite 303, White Plains, NY, 10601

## Limitation of copyright claim

**Material excluded from this claim:** Previously published database.

**Previously registered:** No

**New material included in claim:** revised compilation, weekly updates

## Certification

**Name:** Norbert Mehl

**Date:** March 3, 2009