**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BANXCORP d/b/a BANXQUOTE, and NORBERT MEHL individually d/b/a BANXQUOTE,<br><br>       Plaintiffs,<br><br>   v.<br><br>COSTCO WHOLESALE CORPORATION, CAPITAL ONE FINANCIAL CORPORATION, CAPITAL ONE BANK (USA), N.A., and CAPITAL ONE, N.A., inclusive,<br><br>       Defendants. | Civil Action No. 09-CV-1783 (KMK)(PED)<br><br>ECF Case |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS**

---

**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York  10119-3701
Telephone (212) 613-2000
Facsimile (212) 290-2018
*Attorneys for Defendants Costco Wholesale*
*Corporation; Capital One Financial*
*Corporation; Capital One Bank (USA), N.A.;*
*and Capital One, N.A.*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT .........................................................................................1

FACTUAL BACKGROUND................................................................................................1

ARGUMENT.......................................................................................................................2

I.      THE SECOND AMENDED COMPLAINT DOES NOT MEET THE
        REQUIREMENTS TO SURVIVE A MOTION TO DISMISS ....................................2

II.     PLAINTIFFS' FIRST AND THIRD CLAIMS SHOULD BE DISMISSED ...................3

        A.      Plaintiffs Fail to State a Claim for Copyright Infringement ......................................3

        B.      Plaintiffs Fail to State a Claim for Violation of the DMCA..................................8

III.    PLAINTIFFS' SECOND, FIFTH, SIXTH, AND SEVENTH CLAIMS SHOULD
        BE DISMISSED AS PREEMPTED....................................................................................11

        A.      State Law Claims for Material Within the Realm of Copyright Are
                Preempted .........................................................................................................11

        B.      Plaintiffs' Second Claim for "Hot News" Misappropriation is Preempted..........14

        C.      Plaintiffs' Fifth Claim for Breach of Contract is Preempted ...............................17

        D.      Plaintiffs' Sixth Claim for Unfair Competition is Preempted .............................20

        E.      Plaintiffs' Seventh Claim for Unjust Enrichment is Preempted and
                Precluded by the License Agreement ..................................................................21

IV.     PLAINTIFFS' FOURTH CLAIM FOR FRAUD SHOULD BE DISMISSED ...............22

V.      PLAINTIFFS' DEMAND FOR STATUTORY AND PUNITIVE DAMAGES
        SHOULD BE DISMISSED....................................................................................................24

CONCLUSION....................................................................................................................25

#1442667 v2
012438-65719

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

American Movie Classics Co. v. Turner Entertainment Co.,
  922 F. Supp. 926 (S.D.N.Y. 1996) ....................................................................18, 19

Architectronics, Inc. v. Control Systems, Inc.,
  935 F. Supp. 425 (S.D.N.Y. 1996) ....................................................................18, 19

Ashcroft v. Iqbal,
  129 S. Ct. 1937 (2009)..........................................................................................2, 8

Associated Press v. All Headline News Corp.,
  608 F.Supp. 454 (S.D.N.Y. 2009) ...........................................................................15

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)...................................................................................................3

Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.,
  448 F.3d 573 (2d Cir. 2006) .....................................................................................22

Briarpatch, Ltd. v. Phoenix Pictures, Inc.,
  373 F.3d 296 (2d Cir. 2004) .........................................................................12, 13, 21

Chase v. United Hosp.,
  60 A.D.2d 558, 400 N.Y.S.2d 343 (1st Dept. 1977) ................................................23

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,
  70 N.Y.2d 382 (1987).................................................................................................22

Computer Assocs. v. Altai,
  982 F.2d 693 (2d Cir. 1992) .....................................................................................12

Contractual Obligation Productions, LLC v. AMC Networks,
  546 F. Supp. 2d 120 (S.D.N.Y. 2008) .......................................................................1

Coppola v. Applied Elec. Corp.,
  288 A.D.2d 41, 732 N.Y.S.2d 402 (1st Dept. 2001) ................................................23

Eckes v. Card Prices Update,
  736 F.2d 859 (2d Cir. 1984) .......................................................................................7

Elektra Entm't v. Barker,
  551 F. Supp. 2d 234 (S.D.N.Y. 2008) .....................................................................11

#1442667 v2
012438-65719

eSchololar, LLC v. Otis Educational Systems, Inc.,
    387 F. Supp. 2d 329 (S.D.N.Y. 2005) ...................................................................19

Feist Pubs., Inc. v. Rural Telephone Service Co.,
    499 U.S. 340 (1991)....................................................................................................4, 7

Financial Information, Inc. v. Moody's Investors Service, Inc.,
    808 F.2d 204 (2d Cir. 1986) ..............................................................................5, 13, 15

Gotham Boxing Inc. v. Finkel,
    18 Misc.3d 1114(A), 856 N.Y.S.2d 498 (Sup Ct. 2008) ........................................23

Gusler v. Fischer,
    580 F. Supp. 2d 309 (S.D.N.Y. 2008) ...................................................................21

Hamil America, Inc. v. GFI,
    193 F.3d 92 (2d Cir. 1999) .......................................................................................3

Hamm v. Hatcher,
    No. 05-CV-503 (KMK), 2009 U.S. Dist. LEXIS 43975 (S.D.N.Y. May 5, 2009) ...................8

Harper & Row, Publishers, Inc. v. Nation Enters.,
    723 F.2d 195 (2d Cir. 1983), rev'd on other grounds, 471 U.S.A. 539 (1985) .............4, 11, 13

Kelly v. Arriba Soft Corp.,
    77 F. Supp. 2d 1116 (C.D. Cal. 1999), aff'd in part and rev'd in part, 336 F.3d 811 (9th
    Cir. 2003)................................................................................................................9

Key Publications, Inc. v. Chinatown Today Publishing Enters., Inc.,
    945 F.2d 509 (2d Cir. 1991) .....................................................................................6

Kregos v. Assoc. Press,
    3 F.3d 656 (2d Cir. 1993) .......................................................................................20

Leonard F. v. Isr. Disc. Bank of N.Y.,
    199 F.3d 99 (2d Cir. 1999) .......................................................................................8

M'baye v. World Boxing Assoc.,
    No. 05-cv-9581, 2007 U.S. Dist. LEXIS 23173 ......................................................25

Modell's NY Inc. v. Noodle Kidoodle, Inc.,
    242 A.D.2d 248, 662 N.Y.S.2d 24 (1st Dept. 1997) .............................................23

Mortgage Market Guide, LLC v. Freedman Report,
    LLC, No. 06-cv-140, 2008 U.S. Dist. LEXIS 56871 (D.N.J. July 28, 2008)..........................18

Nat'l Basketball Ass'n v. Motorola, Inc.,
    105 F.3d 841 (2d Cir. 1997) ...........................................................................11, 13, 14

- iii -

#1442667 v2
012438-65719

New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc.,
  497 F.3d 109 (2d Cir. 2007) ..................................................................................4, 5, 6

New York Univ. v. Continental Ins. Co.,
  87 N.Y. 2d 308 (1995) ...............................................................................................23

Premium Mortgage Corp. v. Equifax,
  No. 08-cv-5317, 2009 U.S. App. LEXIS 21762 (October 5, 2009) ...........................1

Schiffer Publ., Ltd. v. Chronicle Books, LLC,
  No. 03-cv-4962, 2004 U.S. Dist. LEXIS 23052 (E.D. Pa. 2004) ...............................9

Sherman v. Bell Atl.,
  No. 95-cv-1817, 1996 U.S. Dist. LEXIS 12563 (S.D.N.Y. August 29, 1996) .........25

Stern v. Gen'l Elec. Co.,
  924 F.2d 472 (2d Cir. 1991) ......................................................................................24

Technical Support Servs. Inc. v. Int'l Business Machines Corp.,
  18 Misc 3d 1106A, 856 N.Y.S.2d 26 (August 11, 1993) ..........................................22

Texas Liquids Holdings v. Key Bank N.A.,
  2007 U.S. Dist. LEXIS 23002 (S.D.N.Y. Mar. 27, 2007) ........................................21

Topps Co. v. Cadbury Stani S.A.I.C.,
  380 F. Supp. 2d 250 (S.D.N.Y. 2005) .......................................................................25

TVT Records v. The Island Def Jam Music Group,
  412 F.3d 82 (2d Cir. 2005) ........................................................................................25

## **STATUTES**

17 U.S.C. § 101............................................................................................................6

17 U.S.C. § 106..........................................................................................................10

17 U.S.C. § 106..........................................................................................................12

17 U.S.C. § 1202........................................................................................................10

17 U.S.C. § 1202(b).................................................................................................9, 11

17 U.S.C. § 1202(b)(1)............................................................................................8, 11

17 U.S.C. § 1202(b)(3)........................................................................................8, 10, 11

17 U.S.C. § 301......................................................................................................11, 12

17 U.S.C. § 301..........................................................................................................20

#1442667 v2
012438-65719

17 U.S.C. § 412(2) ...................................................................................................24

**OTHER AUTHORITIES**

Denicola, <u>Copyright in Collections of Facts: A Theory for the Protection of Nonfiction Literary Works</u>, 81 Colum. L. Rev. 516, 525 (1981) ................................................................4

**RULES**

Fed. R. Civ. P. 8(a)(2) ...............................................................................................2

Fed. R. Civ. P. 9(b) ..................................................................................................24

#1442667 v2
012438-65719

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaint ("SAC") should be dismissed in its entirety because Plaintiffs' claims are preempted or because Plaintiff has failed to adequately state a claim under the applicable pleading standards.[1]

## FACTUAL BACKGROUND

According to the SAC, Capital One and Costco entered an agreement pursuant to which Capital One would "provide a co-branded hosting service" that would enable Costco to offer co-branded money market savings accounts and certificates of deposit to Costco's members (SAC ¶¶ 19–20). Plaintiff and Defendant "Capital One" allegedly entered into a written agreement dated January 28, 2004 (the "BanxQuote License Agreement") commencing on January 12, 2004, with automatic annual renewals pursuant to which "Licensed Data [would] be retrieved by the Company from the BanxQuote website at http://www.banxquote.com for use in direct mail, print advertisements, newspaper advertisements, Company website, and marketing presentations" (SAC ¶ 89 and Ex. A annexed thereto). The SAC alleges that between January 2004 and December 2008, Defendants included BanxQuote rates in promotional material for these bank accounts (SAC ¶ 71–72).

In the SAC, Plaintiff alleges that Defendants' activities were not authorized by the BanxQuote License Agreement and asserts seven claims for relief against the Defendants. Plaintiffs' claims should be dismissed for the reasons set forth below.

---

[1] Mehl should be dismissed as a plaintiff in this action. As this Court previously indicted, Mehl cannot litigate on behalf of BanxQuote. The claims asserted should be brought by BanxCorp only as Mehl has not demonstrated standing to assert any of the claims. For example, Mehl is not the owner of the copyright registration at issue (SAC Ex. B) and thus he lacks standing under the Copyright Act. Contractual Obligation Productions, LLC v. AMC Networks, 546 F. Supp. 2d 120 (S.D.N.Y. 2008). Similarly, Mehl is not a party to the License Agreement (SAC Ex. A) and lacks standing to assert a claim for breach of contract. Premium Mortgage Corp. v. Equifax, No. 08-cv-5317, 2009 U.S. App. LEXIS 21762 (October 5, 2009). The same is true for the various tort claims.

## ARGUMENT

I.  **THE SECOND AMENDED COMPLAINT DOES NOT MEET THE REQUIREMENTS TO SURVIVE A MOTION TO DISMISS**

In its recent decision in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court clarified the requirement of Federal Rule of Civil Procedure 8(a)(2) that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "Rule 8(a)(2) does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . A pleading that offers 'labels and conclusions' or "a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. at 1949 (internal citations omitted).

The Supreme Court suggested a two-part test for considering a motion to dismiss.  First, a court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.  This is premised on the Supreme Court's holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.

Second, a court should assume the veracity of the well-pleaded factual allegations, and "then determine whether they plausibly give rise to an entitlement to relief."

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line

#1442667 v2
012438-65719

> between possibility and plausibility of 'entitlement to relief.' Id. at
> 557 (brackets omitted).

Id. citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  As discussed below, the SAC is replete with threadbare and conclusory recitals of the elements of the various claims and generally lacks factual support for those elements.  When it does make factual allegations regarding the elements, the allegations are simply not plausible.  As such, these claims should be dismissed.

## II.     PLAINTIFFS' FIRST AND THIRD CLAIMS SHOULD BE DISMISSED

Plaintiffs' copyright claims fail because Plaintiffs fail to state a claim for infringement of the individual rates, Plaintiffs claim for infringement of its compilation is conclusory, and Plaintiffs cannot state a claim for violation of the DMCA.

### A.     Plaintiffs Fail to State a Claim for Copyright Infringement

In order to prove a claim for copyright infringement, "a plaintiff with a valid copyright must demonstrate that: '(1) the defendant has actually copied plaintiff's work; **and** (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's.'"  Hamil America, Inc. v. GFI, 193 F.3d 92, 99 (2d Cir. 1999) (emphasis in original) (internal citation omitted).  Assuming, arguendo, that Plaintiffs have alleged copying, they have not validly alleged infringement of protectible elements of Plaintiffs' work.

The SAC does not distinguish Plaintiffs' allegations regarding ownership and infringement of underlying rates from those regarding ownership and infringement of a compilation of the underlying rates.  Nevertheless, we will address each in turn.

3

### 1.  Plaintiffs Fail to State a Claim for Infringement of the Rates

To the extent that the SAC purports to allege infringement of the underlying rates themselves, the SAC fails to state a cause of action.   It is axiomatic that copyright does not protect facts.  "That there can be no valid copyright in facts is universally understood.  The most fundamental axiom of copyright law is that "no author may copyright his ideas or the facts he narrates." Feist Pubs., Inc. v. Rural Telephone Service Co., 499 U.S. 340, 344–45 (1991) (quoting Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S.A. 539, 556 (1985)).

In its seminal decision in Feist, the Supreme Court explained the prohibition against copyright in facts as follows:

> "No one may claim originality as to facts." Id., § 2.11[A], p. 2–157.  This is because facts do not owe their origin to an act of authorship. The distinction is one between creation and discovery: The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence.  To borrow from Burrow-Giles, one who discovers a fact is not its "maker" or "originator." 111 U.S., at 58. "The discoverer merely finds and records." Nimmer § 2.03[E].  Census takers, for example, do not "create" the population figures that emerge from their efforts; in a sense, they copy these figures from the world around them. Denicola, Copyright in Collections of Facts: A Theory for the Protection of Nonfiction Literary Works, 81 Colum. L. Rev. 516, 525 (1981) (hereinafter Denicola).  Census data therefore do not trigger copyright because these data are not "original" in the constitutional sense.  Nimmer § 2.03[E].  The same is true of all facts — scientific, historical,  biographical, and news of the day. "They may not be copyrighted and are part of the public domain available to every person." Miller, supra, at 1369.

499 U.S. at 347–48.

In New York Mercantile Exchange, Inc. v. IntercontinentalExchange, Inc., 497 F.3d 109 (2d Cir. 2007), the Second Circuit considered whether copyright protects the settlement prices for futures contracts.  The court found there is a "strong argument" that settlement prices for

futures contracts are discovered facts rather than original creations, and thus not copyrightable.[2]

The Second Circuit explained its reasoning as follows:

> In considering how to characterize the Committee's task we start with what a settlement price measures. For high-volume months, settlement prices are determinations of how the market values a particular futures contract. After all, there is no dispute that the Committee members seek to determine the appropriate market valuation of each commodity contract, not how the market **should** value them or **will** value them. Under this view, the market is an empirical reality, an economic fact about the world, that Committee members are seeking to discover. Thus, there is a strong argument that, as a matter of law, the Committee is discovering facts, not creating predictions or estimates. So characterized, there is one proper settlement price; other seemingly-accurate prices are mistakes which actually overvalue or undervalue the futures contract. After all, as NYMEX's Executive Vice President and Chief Operating Officer has stated, NYMEX's settlement prices are heavily relied upon because they "reflect actual trades," not mere sentiment.

Id. at 115 (emphasis in original).  Similarly, in Financial Information, Inc. v. Moody's Investors Service, Inc., 808 F.2d 204, 208 (2d Cir. 1986) the Second Circuit affirmed a ruling that daily bond cards containing bond redemption pricing information were not copyrightable where there was insufficient proof of "independent creation."

In New York Mercantile Exchange, the Second Circuit placed significant reliance on the plaintiff's own description of why the values at issue were relied upon.  See 497 F.3d at 115 n. 6 and accompanying text.  Here, Plaintiffs allege that their rates are measurements of market activity.  For example, Plaintiffs allege that the rates serve as "benchmarks to measure the rates and performance of the U.S. banking and mortgage markets."  (SAC ¶ 36).  Going even further, Plaintiffs allege that their rates "are frequently licensed and used as a trusted source and

---

[2] While the Second Circuit's decision affirming summary judgment was grounded on the merger doctrine, rather than lack of copyright, the Court's explanation of copyright in numeric values is instructive.  Moreover, Plaintiffs' claims are also barred by the merger doctrine because there is only a limited range of numeric values available to express the underlying ideas, i.e., the averages Plaintiffs are purporting to calculate.  New York Mercantile Exchange, 497 F.3d at 116–17.

#1442667 v2
012438-65719

performance benchmark by public policymakers, government agencies, GSEs such as Freddie Mac, and major banks."  (SAC ¶ 38).

Similarly, Plaintiffs allege that "the BanxQuote Money Market Index is recognized by the Dow Jones Barron's Dictionary of Banking Terms as an 'Index of rates paid by investors on negotiable certificates of deposit and high yield savings accounts, compiled weekly by BanxCorp."  (SAC ¶ 42).  Plaintiffs also allege that the BanxQuote Jumbo-Conforming Mortgage Index "is typically used by government agencies and economists to analyze the historical spread between national average conforming and jumbo mortgage rates.  It is used as an independent performance benchmark of the U.S. mortgage markets, while at the same time it is used by Freddie Mac as a proxy for the interest rate savings passed through to conforming mortgage borrowers, as shown in a chart on its website." (SAC ¶ 43;  See also SAC ¶ 44–45).

Because Plaintiffs have not alleged that the rates are "predictions" or "estimates" as required under Second Circuit precedent, but rather that they are recognized benchmarks for market activity, any copyright infringement claim based on the rates themselves should be dismissed.  See New York Mercantile Exchange, 497 F.3d at 115.

### 2.   Plaintiffs' Claim for Infringement of Its Compilation is Conclusory

To the extent that Plaintiffs claim Defendants infringed copyright in a compilation, the claim should be dismissed because it is conclusory and implausible.  The Copyright Act defines "compilation" as "a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship."  17 U.S.C. § 101.  As discussed above, "[f]acts, without more, are not copyrightable."  Key Publications, Inc. v. Chinatown Today Publishing Enters., Inc., 945 F.2d 509, 512 (2d Cir. 1991).  A compilation of facts may be copyrightable, but "only to the extent that it features an original selection, coordination or arrangement" Feist

Pubs., Inc. v. Rural Telephone Service Co., 499 U.S. 340, 360 (1991) (holding that white pages do not satisfy the minimum standards for copyright protection).

In order to state a claim for infringement of a compilation, a plaintiff must allege copying of the "selection, coordination or arrangement" of the compilation.  Id.  See also Key Publications, 945 F.2d at 513 (holding that directory is copyrightable "only if the selection, coordination, or arrangement of listings in the directory is sufficiently original or creative"). Moreover, the Second Circuit is "particularly restrictive in the protection of non-fiction works indicating, for example, that the fruits of another's labor in lieu of independent research obtained through the sweat of a researcher's brow, does not merit copyright protection absent, perhaps, wholesale appropriation."  Eckes v. Card Prices Update, 736 F.2d 859, 862 (2d Cir. 1984).

Plaintiffs do not allege any specific facts regarding alleged infringement of the compilation.  Indeed, the SAC does not include any specific facts regarding alleged infringement of the "selection, coordination or arrangement" of the database.  While the SAC contains the conclusory assertion that Defendants "managed to steal 100% of the 2004–2008 database series of BanxQuote Indexes" (SAC ¶ 22), there is not a single factual allegation to suggest that the selection, coordination or arrangement of the compilation was copied.  To the contrary, the facts in the SAC describe only a few specific instances in which particular rates were used (e.g., SAC Figure 4 on p. 21).

Nowhere in the SAC is there a plausible factual allegation that the compilation was copied.  Indeed, Plaintiffs have not even alleged access to the compilation, such as through use of a password to log into a database.  To the contrary, the License Agreement annexed to the SAC authorized Capital One to obtain rates by visiting the BanxQuote web site.  The only factual allegations in the SAC relate to allegedly improper copying of individual rates published

#1442667 v2
012438-65719

by Plaintiffs on the BanxQuote website.[3]  Thus, pursuant to the Supreme Court standards set

forth in <u>Ashcroft</u> and <u>Iqbal</u>, any claim for infringement of the compilation should be dismissed.

### B.    Plaintiffs Fail to State a Claim for Violation of the DMCA

To state a claim for violation of Section 1202(b)(1) of the Copyright Act, Plaintiffs must

allege that, without the authority of the copyright owner or the law, Defendants "intentionally

remove[d] or alter[ed]" copyright management information ("CMI") <u>and</u> that such alteration or

removal was performed "knowing, or, with respect to civil remedies under section 1203, having

reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement of

any right under this title."

To state a claim for violation of Section 1202(b)(3) of the Copyright Act, Plaintiffs must

allege that defendants "distribute[d], import[ed] for distribution, or publicly perform[ed] works,

copies of works, or phonorecords, knowing that copyright management information has been

removed or altered without authority of the copyright owner or the law" <u>and</u> that such

distribution, importation or public performance was done "knowing, or, with respect to civil

remedies under section 1203, having reasonable grounds to know, that it will induce, enable,

facilitate, or conceal an infringement of any right under this title."

Plaintiffs have failed to plausibly allege the requisite elements of either subsection of

Section 1202.

---

[3] Attached as Exhibit 1 is a screenshot of the BanxQuote homepage available to the public and referenced in Plaintiffs' Complaint.  In ruling on the instant motion to dismiss, the court can consider "facts stated on the face of the complaint, [ ] documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken."  <u>Hamm v. Hatcher</u>, No. 05-CV-503 (KMK), 2009 U.S. Dist. LEXIS 43975 (S.D.N.Y. May 5, 2009) (quoting <u>Leonard F. v. Isr. Disc. Bank of N.Y.</u>, 199 F.3d 99, 107 (2d Cir. 1999)).

#1442667 v2
012438-65719

### 1.      Plaintiffs fail to plausibly allege intentional removal or alteration of CMI (17 U.S.C. § 1202(b)(1))

The SAC alleges that "Defendants, without the authority of Plaintiffs or the law, have intentionally altered the copyright management information by displaying information such as 'Source:  Banxquote.com national averages as of [date],' or another similarly altered reference line . . . " (SAC ¶ 129).  This allegation is implausible.

First, the CMI at issue is located at the very bottom of Plaintiffs' web pages, and is not located on or even in close proximity to the particular rates that Defendants allegedly copied.  Given the lack of proximity between the CMI and the rates allegedly copied, it is implausible to allege that Defendants "altered" the CMI when they allegedly copied the rates.  In Schiffer Publ., Ltd. v. Chronicle Books, LLC, No. 03-cv-4962, 2004 U.S. Dist. LEXIS 23052 (E.D. Pa. 2004), the court was faced with a similar issue.  The court held that no CMI was removed when defendants posted single photographs from a copyrighted compilation where the only CMI was the copyright notice for the compilation and no additional notice appeared near the posted images.

The court held in Schiffer that "to be actionable under § 1202(b), a defendant must remove copyright management information from the 'body' of, or area around, plaintiff's work itself."  Id. at *46;  Kelly v. Arriba Soft Corp., 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (finding no violation of §1202(b) when defendant copied photographs without the copyright management information that appeared in the text around the images) aff'd in part and rev'd in part, 336 F.3d 811 (9th Cir. 2003).  As such, any allegation that Defendants "altered" CMI is conclusory, at best.

Second, Defendants' action with respect to crediting BanxQuote as the source of the rates is exactly what the License Agreement prescribes. Paragraph 7 of the License Agreement provides, in pertinent part, as follows:

> 7. In distributing or promoting the BanxQuote Data, Company shall refer to them as only by the name "BanxQuote.com", "BanxQuote.com Rates", "BanxQuote.com Index", "**BanxQuote.com National Averages**", "BanxQuote.com Market Data", by the BanxQuote.com logo or by other name(s) as is expressly authorized in writing by BanxQuote." (emphasis added).

Not only have Plaintiffs failed to plausibly allege intentional alteration of CMI, their allegations confirm Defendants' compliance with the License Agreement in which the instant dispute is rooted.

### 2. Plaintiffs fail to plausibly allege knowing distribution, importation for distribution or public performance (17 U.S.C. § 1202(b)(3))

In no part of the SAC do Plaintiffs allege that Defendants distributed, imported for distribution, or publicly performed Plaintiffs' copyrighted compilation of facts. Plaintiffs' allegation that they refer to as a violation of 17 U.S.C. § 1202(b)(3) is only another conclusory allegation that Defendants "displayed Plaintiffs' BanxQuote Indexes . . . knowing that the [CMI] had been altered . . . " (SAC ¶ 130). Defendant's alleged act of "display" is not equivalent to distribution, importation, or public performance, thereby making the claim deficiently stated.

"Display" is not one of the actions listed in 17 U.S.C. § 1202(b)(3), and its omission is significant. The Copyright Act defines the display right as distinct from the other exclusive rights set forth in 17 U.S.C. § 106. Had the legislature intended for "display" to be included in § 1202, it would appear. Instead, only "distribute, import for distribution, [and] publicly perform" appear in § 1202. This court has reasoned similarly in an analogous situation regarding a claim using the non-statutory language "making available" that "because Congress did not expressly equate the act of 'offering to distribute . . . for the purposes of further distribution' to

#1442667 v2
012438-65719

the act of 'making available,' Plaintiffs' allegations . . . fail to state a claim." Elektra Entm't v. Barker, 551 F. Supp. 2d 234, 245 (S.D.N.Y. 2008).

In addition to not stating a required element of § 1202(b)(3), as discussed above, Plaintiffs fail to plausibly allege that CMI was removed or altered. Therefore, Plaintiffs have failed to allege required elements of a claim for violation of §1202(b)(3).

### 3. Plaintiffs fail to allege the requisite knowledge

Both subsections §§ 1202(b)(1) and 1202(b)(3) also require that the purported wrongful act was made "knowing, or, . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b). The closest Plaintiffs come to alleging this element is their conclusory statement that Defendants' alleged actions were "willful and intentional" (SAC ¶ 131), but "willful and intentional" are not elements of claims under §1202(b). Moreover, as acknowledged by Plaintiffs, Defendants credited BanxQuote as the source of the rates exactly in the manner specified by the License Agreement. As such, Plaintiffs cannot plausibly allege that Defendants acted with an intent to aid or hide infringement.

## III. PLAINTIFFS' SECOND, FIFTH, SIXTH, AND SEVENTH CLAIMS SHOULD BE DISMISSED AS PREEMPTED

### A. State Law Claims for Material Within the Realm of Copyright Are Preempted

The Copyright Act provides for preemption of state law "which may conflict with the federal policies embodied in the Act." Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195, 199 (2d Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). In Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841 (2d Cir. 1997), the Court of Appeals for the Second Circuit described the test for preemption as follows:

> Under 17 U.S.C. § 301, a state law claim is preempted when: (i)
> the state law claim seeks to vindicate "legal or equitable rights that
> are equivalent" to one of the bundle of exclusive rights already

> protected by copyright law under 17 U.S.C. § 106 — styled the
> "general scope requirement"; and (ii) the particular work to which
> the state law claim is being applied falls within the type of works
> protected by the Copyright Act under Sections 102 and 103 —
> styled the "subject matter requirement."

Id. at 848.

The preemption doctrine is codified in Section 301 of the Copyright Act, 17 U.S.C.

§ 301, which provides as follows:

> Preemption with respect to other laws.  (a) On and after January 1,
> 1978, all legal or equitable rights that are equivalent to any of the
> exclusive rights within the general scope of copyright as specified
> by section 106 in works of authorship that are fixed in a tangible
> medium of expression and come within the subject matter of
> copyright as specified by sections 102 and 103, whether created
> before or after that date and whether published or unpublished, are
> governed exclusively by this title. Thereafter, no person is entitled
> to any such right or equivalent right in any such work under the
> common law or statutes of any State.

## 1.     The General Scope Requirement is Satisfied

The general scope requirement is satisfied "when the state-created right may be abridged

by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright

law.  (citation omitted).  In other words, the state law claim must involve acts of reproduction,

adaptation, performance, distribution or display." Briarpatch, Ltd. v. Phoenix Pictures, Inc., 373

F.3d 296, 305 (2d Cir. 2004).  Moreover, the state law claim "must not include any extra

elements that make it qualitatively different from a copyright infringement claim." Id.  Courts

take a "restrictive view" of what extra elements will suffice.  As the Second Circuit explained:

> "An action will not be saved from preemption by elements such as
> awareness or intent, which alter 'the action's scope but not its
> nature' . . . . Following this 'extra element' test, we have held that
> unfair competition and misappropriation claims grounded solely in
> the copying of a plaintiff's protected expression are preempted by
> section 301."

Computer Assocs Int'l v. Altai, Inc. 982 F.2d 693, 717 (2d Cir. 1992)(internal citations omitted).

#1442667 v2
012438-65719

As set forth in more detail below, Plaintiffs' second, fifth, sixth and seventh claims all seek relief for acts involving reproduction and distribution of the BanxQuote Indexes.  As such, the general scope requirement is satisfied.

### 2.    The Subject Matter Requirement is Satisfied

The subject matter requirement is satisfied as long as the work "falls within the type of works protected by the Copyright Act."  Gusler v. Fischer, 580 F.Supp. 2d 309, 316 (S.D.N.Y. 2008).  Preemption bars claims with respect to uncopyrightable as well as copyrightable elements.  Nat'l Basketball Ass'n, 105 F.3d at 849 (holding that "Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements).  "A work need not consist entirely of copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense."  Briarpatch, 373 F.3d at 305.  See also Financial Information, Inc. v. Moody's Investor's Service, Inc., 808 F.2d 204 (2d Cir. 1986) (rejecting argument that preemption is limited to works of authorship).  In Harper & Row, Publishers, Inc. v. Nation Enters., 723 F.2d 195 (2d Cir. 1983), the Second Circuit explained why preemption applies even to works not protected by copyright:

> Were this not so, states would be free to expand the perimeters of copyright protection to their own liking, on the theory that preemption would be no bar to state protection of material not meeting federal statutory standards.  That interpretation would run directly afoul of one of the Act's central purposes, to "avoid the development of any vague borderline areas between State and Federal protection."

Id. at 200 (affirming dismissal of conversion and tortious interference claims, nothing that "[t]he fact that portions of the Ford memoirs may consist of uncopyrightable material, an issue discussed below, does not take the work as a whole outside the subject matter protected by the Act.").

#1442667 v2
012438-65719

This reading of the statute is supported by the legislative history of the Copyright Act. The House Report states as follows:

> As long as a work fits within one of the general subject matter categories of sections 102 and 103, the bill prevents the States from protecting it even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.

H.R. No. 94-1476 at 131, reprinted in 1976 U.S.C.C.A.N. at 5747 (quoted in Nat'l Basketball Ass'n at 848).  Here, the BanxQuote Indexes are expressive content, e.g. numbers, that while not themselves copyrightable (see e.g., Feist), can, in certain circumstances, be protected as a compilation.  As such, the subject matter requirement is satisfied.

**B.     Plaintiffs' Second Claim for "Hot News" Misappropriation is Preempted**

Under New York law, a claim for "hot-news" misappropriation is limited to the following circumstances:

> (i) a plaintiff generates or gathers information at a cost; (ii) the information is time-sensitive; (iii) a defendant's use of the information constitutes free-riding on the Plaintiffs' efforts; (iv) the defendant is in direct competition with a product or service offered by the plaintiffs; and (v) the ability of other parties to free-ride on the efforts of the plaintiff or others would so reduce the incentive to produce the product or service that its existence or quality would be substantially threatened.

Nat'l Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 845 (2d Cir. 1997) (finding Plaintiffs' misappropriation claim preempted).

In Nat'l Basketball Ass'n, the Second Circuit held that "only a narrow "hot-news" misappropriation claim survives preemption."  Id. at 852.  The court further held that "[a]n indispensable element of an INS "hot-news" [misappropriation] claim is free-riding by defendant on a Plaintiffs' product, enabling the defendant to produce a directly competitive product for less

#1442667 v2
012438-65719

money because it has lower costs." Id. at 854.  The court found defendant's product did not meet the test.

Plaintiffs do not allege any specific facts regarding the allegedly time sensitive nature of their rates or the speed with which Defendants allegedly copied the rates.  In fact, there are no allegations in the SAC that the alleged copying took place in real time or anything close to real time.  To the contrary, the SAC demonstrates a substantial lag between the date a particular rate appeared on the BanxQuote web site and its appearance in any of Defendant's materials.

For example, Figure 4 (SAC ¶ 81) alleges that the May 2006 issue of Costco Connection included a chart stating that the national averages for a five-year CD and a money market account were 3.99% and 1.30% respectively, with an endnote stating "Source: Banxquote.com national average as of 4/12/06."  The fact that the May issue of Costco Connection contained rates from mid-April of that year demonstrates the significant lead time involved in preparing such materials and confirms that there was nothing "hot" about the rates by the time they were allegedly used by Defendants.

In Financial Information, Inc., the Second Circuit found no misappropriation where specific bond redemption prices were used by defendant approximately ten days later:

> FII proved neither the quantity of copying nor the immediacy of distribution necessary to sustain a "hot" news claim. Because of lead times, to the extent that Moody's did copy from FII, the information it published would have been at least ten days old. The "hot" news doctrine is concerned with the copying and publication of information gathered by another before he has been able to utilize his competitive edge. See, e.g., International News Service, supra; Bond Buyer, supra. We hold that FII failed to prove such a claim here.

808 F.2d at 209.

Moreover, Plaintiffs' attempt to rely upon the district court decision in The Associated Press v. All Headline News Corp., 608 F.Supp. 454 (S.D.N.Y. 2009) is unavailing.  That case

involved allegations that the defendants hired writers to find "breaking news stories" and revise them for use by defendants in their competing news service.  Id. at 457.  Indeed, the Amended Complaint in that action alleged that the stories were distributed by the defendants within fifteen minutes after receipt from the writers.  Amended Complaint ¶ 60 at 16 (filed April 11, 2008).

Plaintiffs' allegations regarding free riding and direct competition by Defendants are similarly conclusory and implausible.  Plaintiffs are allegedly engaged in licensing indexes and operation of the BanxQuote.com website — a retail online "marketplace . . . connecting consumers (the buyers) with multiple financial institutions (the sellers, or service providers) throughout the United States" (SAC ¶¶ 35, 40).  Costco is allegedly the "largest membership warehouse club chain in the world" (SAC ¶ 18).  The Capital One Defendants are allegedly a "trusted national banking institution" (SAC ¶91). There are no allegations that Defendants are engaged in licensing bank rate databases, or that Plaintiffs are operating a membership warehouse club or bank.

Moreover, the allegation that the parties are in competition because they both use BanxQuote Indexes to facilitate the marketing of savings accounts and certificates of deposit (SAC ¶ 121) is conclusory and implausible.  Plaintiffs' allegation is the equivalent of claiming that every newspaper that includes average banking rates and accepts advertisements from banks is in competition with Plaintiffs.  It is simply implausible to allege that Defendants' co-branded site is a substitute for Plaintiffs' web site or for any other banking marketplace.

Plaintiffs' allegations that Defendants' actions are likely to so reduce their incentive as to threaten their very existence are similarly conclusory and implausible.  Assuming, arguendo, that Defendants' co-branded offering is outside the scope of the License Agreement, at best, Plaintiffs may have lost a single license to a single customer, namely Costco.

#1442667 v2
012438-65719

Plaintiffs' misappropriation claim should be dismissed because it is preempted by the Copyright Act, and the allegations are both conclusory and implausible. Plaintiffs have done nothing more than recite the elements of a claim for misappropriation.

### C.     Plaintiffs' Fifth Claim for Breach of Contract is Preempted

Plaintiffs' contract claim is preempted because Plaintiff seeks to protect rights equivalent to copyright; indeed, the BanxQuote License Agreement does not include any contractual rights that are not equivalent to copyright. To the contrary, all of the rights covered by the License Agreement are equivalent to those granted by the Copyright Act. The following table sets forth the applicable language from the License Agreement, and the corresponding rights under the Copyright Act:

| Contract Clause | Corresponding Exclusive Rights Under Copyright Act |
|---|---|
| Licensed Data to be retrieved by the Company from the BanxQuote website at http://www.banxquote.com for use in direct mail, print advertisements, newspaper advertisements, Company website, and marketing presentations. | Right of reproduction, § 106(1) |
| Company is hereby contracting with BanxCorp ("BanxQuote") for the display and dissemination of BanxQuote's proprietary market data and Indices, to be provided by BanxQuote as indicated above. Subject to the terms and conditions of this Agreement, BanxQuote hereby grants to Company a non-exclusive, limited and non-transferable license to electronically disseminate the BanxQuote Data on the Company's Web site. | Right to display publicly, § 106(5)<br><br>Right of reproduction, § 106(1)<br><br>Right of distribution, § 106(3) |

At best, the SAC alleges that Defendants improperly used and distributed the BanxQuote Indexes. As summarized in the table above, each of these purported wrongs is premised on a contractual right that is equivalent, if not identical, to rights granted by the Copyright Act. See

#1442667 v2
012438-65719

The Mortgage Market Guide, LLC v. Freedman Report, LLC, No. 06-cv-140, 2008 U.S. Dist.

LEXIS 56871 (D.N.J. July 28, 2008).  In Mortgage Market Guide at *116, the contract clause

stated, in part, that the user may not "upload, post, publish, transmit, reproduce, distribute or in

any way exploit any information, software or other material obtained through the Service."  The

court found the claim preempted, holding as follows:

> These are the same rights protected in Section 106 of the
> Copyright Act, namely: reproduction and distribution.  A right
> under state law is deemed to be equivalent to copyright if it "is one
> that is infringed by the mere act of reproduction, performance,
> distribution or display.  The fact that the state-created right is either
> broader or narrower than its federal counterpart will not save it
> from preemption."

Id. (quoting Nimmer, § 1.01[B][1] at p. 1–12).

There are conflicting decisions in the Southern District as to whether contract claims are

per se immune from preemption because the promise to pay inherent in a contract in and of itself

satisfies the extra element test.  For example, in American Movie Classics Co. v. Turner

Entertainment Co.,  Judge Schwartz held that "a breach of contract claim is preempted if it is

merely based on allegations that the defendant did something that the copyright laws reserve

exclusively to the plaintiff (such as unauthorized reproduction, performance, distribution, or

display)."  922 F. Supp. 926, 931 (S.D.N.Y. 1996).  On the other hand, in Architectronics, Inc. v.

Control Systems, Inc., 935 F. Supp. 425, 439 (S.D.N.Y. 1996), Judge Mukasey declined to

follow American Movie, effectively adopting a per se rule that "the 'extra element' that saves a

contract claim from preemption is the promise itself."  The Second Circuit has not resolved this

conflict.

The two leading copyright treatises agree with Judge Schwartz's rejection of the per se

rule.  As stated in the Nimmer treatise, "the rule safeguarding contract causes of action against

copyright pre-emption is less than categorical.  Although the vast majority of contract claims will

#1442667 v2
012438-65719

presumably survive scrutiny . . . nonetheless pre-emption should continue to strike down claims that, though denominated 'contract,' nonetheless complain directly about the reproduction of expressive materials."  1 Nimmer on Copyright, § 1.01[B](1)(a)[iii].

The Patry treatise similarly rejects the per se rule, describing it as a tautology:

> A mere promise not to accept the benefit of a copyrighted work without paying for that benefit is insufficient to avoid preemption, as other courts have correctly held.  The "extra" element of a promise to pay is not extra; it is instead an element of contract formation, not an element in addition to an infringement action. The promise-to-pay argument for avoiding preemption is no different from the tautology that a contract action is not preempted because it is a contract action: the promise to pay goes only to whether there is a contract (i.e., whether consideration exists), not to whether the contract itself alleges an element qualitatively different in kind from an infringement action.  Instead, what is required is a promise concerning a right not equivalent to that granted by the Copyright Act.

5 Patry on Copyright, § 18:27 and n. 7 (citing American Movie Classics as correctly holding that contract claim was preempted).

The most recent Southern District decision on the issue created additional confusion by stating that the court agrees with Judge Mukasey's decision in Architectronics, while the holding actually granted defendant's motion to dismiss the breach of contract claim as preempted to the extent that it sought to enforce the exclusive right to reproduce and distribute Plaintiffs' work. See eScholar, LLC v. Otis Educational Systems, Inc., 387 F. Supp. 2d 329, 332 (S.D.N.Y. 2005).[4]

---

[4] Judge Robinson's statement that he agrees with Architectronics is thus dicta, since the court accepted and adopted the magistrate's recommendation "that Defendant's motion be granted to the extent it seeks to enforce Plaintiffs' exclusive right to reproduce and distribute its work, but denied to the extent it seeks to enforce contractually guaranteed rights to audit books and receive royalty fees."

#1442667 v2
012438-65719

Plaintiff has not and cannot assert any contraction violation outside the subject of copyright.  Defendants respectfully submit that the this court should reject the per se rule and dismiss Plaintiffs' contract claim as preempted.

### D.     Plaintiffs' Sixth Claim for Unfair Competition is Preempted

The Second Circuit has held that "unfair competition . . . claims grounded solely in the copying of a Plaintiffs' protected expression are preempted by section 301." Computer Assocs., 982 F.2d 693 at 717.  (citing cases).  To determine whether an "extra element" qualitatively changes the nature of the action courts "must determine 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.'" Id. at 716.

Computer Associates makes clear that unfair competition claims that satisfy the extra element test are not preempted, such as "unfair competition claims based on breach of confidential relationship, breach of fiduciary duty and trade secrets." Id. at 717.  In the instant case, however, the only factual allegations in the SAC relate to use of the BanxQuote rates, and the only act referred to in Plaintiffs' claim for unfair competition alleges that Defendants "misappropriated to their commercial advantage a benefit and/or property right of BanxQuote . . ." (SAC ¶ 153).  This fact does not remove Plaintiffs' unfair competition claim from preemption. Kregos v. Assoc. Press, 3 F.3d 656, 666 (2d Cir. 1993)(dismissing claim for unfair competition under New York law as preempted by 17 U.S.C. § 301 where plaintiff's alleged "extra element" was use of Plaintiff's form with false copyright information).

Plaintiffs' remaining allegations of unfair competition are conclusory statements that Defendants have engaged in wrongful conduct and violated a litany of other statutes and codes. Plaintiffs do not allege breach of confidentiality or trade secrets.  Indeed, Plaintiffs cannot in good faith make such allegations since there is no confidentiality obligation in the License

#1442667 v2
012438-65719

Agreement, and their publication of the Indexes on the BanxQuote.com home page precludes a trade secret claim.

While Plaintiffs do assert conclusory allegations of breach of fiduciary duty, it is well-established that a bank, as a party to a contract, does not automatically carry a fiduciary duty to another.  Texas Liquids Holdings v. Key Bank N.A., 2007 U.S. Dist. LEXIS 23002, *8 (S.D.N.Y. Mar. 27, 2007) (dismissing Plaintiff's claim based on its "summary contention that Defendant owes it a fiduciary duty," and noting that "New York courts are not sympathetic" to unsupported allegations of a fiduciary relationship).  Plaintiffs' naked allegation that Capital One owed a fiduciary duty to Plaintiffs, without factual support, does not support a claim for breach of fiduciary duty.

### E.   Plaintiffs' Seventh Claim for Unjust Enrichment is Preempted and Precluded by the License Agreement

In Briarpatch, the Second Circuit applied the preemption test to a claim for unfair competition, and found it was preempted.  There, the plaintiffs alleged unjust enrichment resulting from defendants' act of turning a novel and screenplay into a motion picture.  "This act would, in and of itself, infringe the adaptation rights protected by § 106(2) (assuming these rights belong to plaintiffs."  373 F.3d at 306.  As such, it was preempted.

The Second Circuit further rejected plaintiffs' argument that enrichment is not an element of copyright infringement.  "Like the elements of awareness or intent, the enrichment element here limits the scope of the claim but leaves its fundamental nature unaltered."  Id. at 306–307 (quoting 1 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 1.01[B][1][g] (2003) for the proposition that "[A] state law cause of action for unjust enrichment or quasi contact should be regarded as an 'equivalent right' and hence, pre-empted insofar as it applies to copyright subject matter.")  See also Gusler v. Fischer, 580 F. Supp. 2d 309 (S.D.N.Y. 2008)

21

(holding claim for unjust enrichment arising from defendants' marketing of a product that allegedly infringed the Plaintiffs' copyrighted drawings for a prototype of the product to be preempted).

Plaintiffs' unjust enrichment claim against the Capital One Defendants should also be dismissed for the separate reason that it is precluded by the existence of the BanxQuote License Agreement.  See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (holding that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter").

## IV.    PLAINTIFFS' FOURTH CLAIM FOR FRAUD SHOULD BE DISMISSED

Under New York law, claims of fraud that merely duplicate contract claims must be dismissed.  The New York Court of Appeals has stated that "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) (affirming dismissal of negligence claims as purely duplicative of breach of contract claims).  The legal duty that must be present to transform a contract claim into a valid tort claim must arise form "circumstances extraneous to, and not constituting elements of, the contract."  Id. at 390.  Here, Plaintiff has not alleged a duty extraneous from the contract.

Plaintiffs' allegations that the Capital One Defendants owe a fiduciary duty to Plaintiffs because they are financial institutions (SAC ¶ 91) are without merit.  As noted above, there is generally no "special relationship" between "parties to an arm's-length business relationship." Technical Support Servs. Inc. v. Int'l Business Machines Corp., 18 Misc. 3d 1106A, 856 N.Y.S.2d 26 (August 11, 1993).

#1442667 v2
012438-65719

In a thoughtful opinion, Justice Fried recently reiterated that fraud claims based on allegations the defendant never intended to perform are regularly dismissed:

> The First Department has also dismissed fraud claims based on future expectation, where they were based merely on a vague allegation that the defendant never intended to comply with a particular contract. E.g., Coppola v. Applied Elec. Corp., 288 A.D.2d 41, 42, 732 N.Y.S.2d 402 (1st Dept. 2001) (affirming dismissal of fraud claim, based on the mere allegation that defendant "harbored the undisclosed intention from the outset to never comply" with the parties' agreement, as duplicative of his breach of contract claim); Modell's NY Inc. v. Noodle Kidoodle, Inc., 242 A.D.2d 248, 249–50, 662 N.Y.S.2d 24 (1st Dept. 1997) (affirming summary judgment dismissal of fraud claim based on "mere . . . allegations that the contracting parties did not intend to meet their contractual obligations" and did not plead the circumstances of fraud with particularity); Chase v. United Hosp., 60 A.D.2d 558, 559, 400 N.Y.S.2d 343 (1st Dept. 1977) (dismissing on summary judgment a cause of action alleging "fraud" in the inducement of employment contract based merely on claim that defendant "never intended to" honor contractual promise).

Gotham Boxing Inc. v. Finkel, 18 Misc.3d 1114(A), 856 N.Y.S.2d 498 (Sup Ct. 2008).

Justice Fried reconciled those New York contract cases that allow fraud claims to stand with those that dismiss them as follows:

> To be sure, the distinction is a fine one. It seems to turn on whether the complaint alleges a particular statement, omission, or other conduct by the defendant, in addition to the text or statements that form the basis of the alleged contract. As Graubard shows, it does not seem to matter that the alleged fraudulent representation is virtually identical to the promise contained in the contract as long as it is made at a different time and place.

Even applying this more lenient standard, Plaintiffs' claim fails. Plaintiffs have not and cannot allege any particular statement, omission or other conduct apart from those that form the basis of the License Agreement. New York Univ. v. Continental Ins. Co., 87 N.Y. 2d 308, 318 (1995)("General allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support the claim."); Stern v. Gen'l Elec. Co., 924 F.2d 472, 476

#1442667 v2
012438-65719

(2d Cir. 1991)("while bad faith 'may be averred generally,' allegations of fraud must be supported by particular statements indicating the factual circumstances on which the theory of fraud is based").  Moreover, Plaintiffs fail to even plead the elements of fraud with regard to Defendant Costco.  Thus, Plaintiff's fraud claim should be dismissed.[5]

## V.    PLAINTIFFS' DEMAND FOR STATUTORY AND PUNITIVE DAMAGES SHOULD BE DISMISSED

Plaintiffs' demand for statutory damages (SAC p. 42 ¶ D) should be dismissed because Plaintiffs' copyright registration for the compilation did not issue until March 6, 2009 (SAC Ex. B), and the alleged infringement ended December 31, 2008 (SAC ¶ 71).  The Copyright Act expressly prohibits recovery of statutory damages for infringement of a published work before the effective date of its registration, unless the registration is made within three months of first publication.  17 U.S.C. § 412(2).  Plaintiff BanxQuote published the database between October 1, 2008 and December 31, 2008 but did not register the work until March 6, 2009 — nearly a year later.  As such, Plaintiffs are not entitled to statutory damages under the Copyright Act.

Plaintiffs' demand for punitive damages (SAC p. 42 ¶D) should be stricken because punitive damages are not available in this case.  Plaintiffs demand punitive damages for their claims of hot news misappropriation, common law fraud, unfair competition, and unjust enrichment.  Even if any of these causes of action should survive the instant motion to dismiss, Plaintiffs have failed to allege  the sort of egregious conduct against the public necessary to support an award of punitive damages.

Under New York law, punitive damages are available only when plaintiff alleges and demonstrates egregious conduct where that conduct is against the public.  Such a situation is far

---

[5] Plaintiffs' fraud claim should also be dismissed for the separate reason that they failed to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

#1442667 v2
012438-65719

removed from the instant case, which arises from an alleged breach of a contractual relationship between two corporate parties.  TVT Records v. The Island Def Jam Music Group, 412 F.3d 82, 93 (2d Cir. 2005) (striking Plaintiff's claim for punitive damages on the ground that "New York law only permits such an award when a defendant's conduct is 'part of a pattern directed at the public generally.'"); Sherman v. Bell Atl., No. 95-cv-1817, 1996 U.S. Dist. LEXIS 12563, *19– *23 (S.D.N.Y. August 29, 1996) (awarding summary judgment to defendant on the issue of punitive damages for unfair competition and misappropriation claims because plaintiff failed to offer evidence, necessary under the common law of New York, that defendant's actions were wanton, willful, or morally culpable to an extreme degree); Topps Co. v. Cadbury Stani S.A.I.C., 380 F. Supp. 2d 250, 263 (S.D.N.Y. 2005) (holding that New York law limits punitive damages for fraudulent inducement arising from contract formation in the same way it limits punitive damages for breach of contract by requiring a public wrong); M'baye v. World Boxing Assoc., No. 05-cv-9581, 2007 U.S. Dist. LEXIS 23173 (holding "punitive damages are not recoverable with respect to unjust enrichment claims").

## CONCLUSION

For the reasons stated above, the SAC should be dismissed in its entirety.

Dated: New York, New York
       October 9, 2009

**GIBBONS P.C.**

s/Nancy J. Mertzel
By: Nancy J. Mertzel

One Pennsylvania Plaza, 37th Floor
New York, New York  10119-3701
(212) 613-2000

*Attorneys for Defendants Costco Wholesale Corporation; Capital One Financial Corporation; Capital One Bank (USA), N.A.; and Capital One, N.A*

#1442667 v2
012438-65719